Lawson *v.* Dunn.

CHARLES S. LAWSON

*v.*

THOMAS DUNN.

[Filed February 26th, 1904.]

1. In the settlement of an insolvent partnership, claims of individual partners cannot be recognized until other claimants are paid in full.

2. Where a member of an insolvent partnership conveyed property to his wife which was rented to the firm, and the conveyance was in fraud of creditors, the wife was a mere trustee in equity, the title, in respect to his creditors, remaining in him, and she was not entitled to payment of rent while firm debts remained unpaid.

3. Where a creditor of a firm who had obtained judgment on his claim obtained a decree against the wife of one of the partners setting aside as fraudulent a deed to her of her husband's property, under which decree the property was sold, but not for a sum sufficient to satisfy the claim, on insolvency of the firm and distribution of its assets in the hands of a receiver, such creditor was entitled to share ratably on the full amount of his claim, without deducting the amount of the sale, unless the dividends would amount to more than the balance due him after applying the sum received from the sale.

On order to show cause.

*Mr. William T. Hilliard,* for the receiver.

*Mr. Charles Mecum,* for Ivins, Deats & Magce et al.

*Mr. Isaac O. Acton,* for John J. Thompson, administrator.

*Mr. Jonathan W. Acton,* for Mary A. Dunn.

REED, V. C.

This is the return day of an order to show cause why the account of a receiver of a partnership should not be approved, and distribution ordered.

The account taken by the master included all the assets of the firm and all claims against the firm, not only the claims of third parties, but of the partners as well.

As there is not enough assets to pay all these claims, the question now supervenes, in what manner is the money in the hands of the receiver to be disbursed?

It is quite clear that the claims of the partners cannot be recognized until the other claimants are paid in full. In respect of the claims of the other claimants, the first question propounded is whether the claim of Mary A. Dunn should share in the distribution before all the other valid claims, other than those of the partners, are paid in full.

Her claim is for the rent of the store in which the firm carried on its business. The title to this store, when it was originally used for this business, was in Thomas Dunn, the husband of Mary A. Dunn. In April, 1894, he conveyed this store to Mary A. Dunn. In a suit brought against Mary A. Dunn by John J. Thompson, administrator of Joseph B. Thompson—a claimant against the firm assets who obtained a judgment for the amount of his claim, to set the deed from Dunn to his wife aside as fraudulent—a decree was made in the suit in accordance with the prayer of the bill.

I think that the testimony taken before the master shows that the conveyance was made in fraud of all creditors.

This left her a mere trustee in equity,' the real title, in respect of the husband's creditors, being in him.

As against the receiver, so far as he represents those creditors, I do not see how she can claim rent for property which was her husband's, any more than her husband could claim rent to be paid out of the firm assets while firm debts remain unpaid.

I see no reason why these rents could not be reached by any judgment creditor of the husband as equitable assets belonging to him. While the receiver could not recover them if they were due from a tenant other than the firm (*Hiles* v. *Dunn, 16 Dick. Ch. Rep. 391*), yet, being a claim against the firm, it is a claim, in equity, by the husband, who is a partner. .

Lawson *v.* Dunn.

I am of the opinion that her claim is not entitled to recognition in making distribution unless there remains a surplus after paying firm creditors.

The next question propounded is whether the John J. Thompson, administrator, &c., already mentioned, is entitled to share ratably upon the full amount of his claim of $3,502.75 and his other claim of $619.20.

As already observed, he obtained a decree against Mrs. Dunn setting aside the deed to her as a fraud upon his intestate as her husband's creditor.. The property was sold by virtue of this decree, and there remains as the proceeds of such sale the sum of $2,118.19. The query is whether this amount should be deducted from the amount of the claims, and a dividend declared for the remainder, or whether Thompson is entitled to a dividend upon the entire amount of his claims.

The rule applied by the bankruptcy courts is that if a creditor holds security given him by the bankrupt he must surrender his security for the benefit of all the creditors, if he asks for dividends upon his entire claim. He can give credit for his security, and claim for the balance, or give up his security altogether and prove for his whole debt. *Lind. Part.* § *714.* This rule is only applicable where the debt is payable out of the estate to which the security belongs. If the security is given by some one other than the bankrupt, the creditor can hold his security and prove for his whole debt. And partners, under this rule, are regarded as parties distinct from the firm. Therefore, if one partner mortgage his own property for a debt of the firm, the creditor is allowed to prove for his whole debt against the firm and retain the mortgage security given by the partner. *Ex parte Caldicott, 25 Ch. Div. 716; Lind. Part.* § *716.* The distinction is apparent from a comparison of the case of *Ex parte Caldicott, supra,* and the case of *Ex parte West Riding Banking Co., 19 Ch. Div. 105,* in which a creditor held a mortgage upon the property of a partner who himself became a bankrupt, and it was held that the creditor could not prove without giving up his security. This rule respecting securities is the foundation of the rule that where the claimant is the creditor, not only

of the bankrupt, but also of another person, he may prove against the estate of the former, and yet sue the latter and get from him what he can. *Ex parte Schofield, 12 Ch. Div. 337.*

A creditor of a firm, one member of which has become a bankrupt, can prove against the estate of the bankrupt and sue the other partners. *Ex parte Isaacs, 6 Ch. App. 58; Lind. Part. § 718.*

Under the rules recognized in the administration of bankrupt estates it is quite clear that the firm and the partners are to be regarded as distinct parties, and that inasmuch as the creditor would have had the right to hold a security given him by a partner, so he has the right to sue a partner for a firm debt, and also to prove for his entire debt against the insolvent firm.

Nor am I aware that this doctrine has been questioned in the distribution of insolvent estates by receivers or assignees.

There is a contrariety of view in respect to whether, where the creditor holds collaterals of the insolvent, he can prove for the whole amount of his debt, but so far as I know there is no dispute when the collateral is that of a person other than the insolvent.

In the case of *State Bank* v. *Receivers of Bank, 2 Gr. Ch. 266,* cited as opposed to the right to prove for the full amount, the pledge consisted of drafts which belonged to the insolvent New Brunswick Bank, and which had been endorsed over to the State Bank as collateral security. It was held by Chancellor Vroom that the amount of the collateral should first be deducted from the claim of the State Bank. In all the cases cited by the learned chancellor the collaterals were given by the bankrupt.

The rule in respect to payments received from others than the insolvent, as applied to the relations of creditor, partner and firm, is summed up by Mr. Bates thus:

"Both in England and here, if a joint creditor has also separate security upon the property of one of the partners, or a separate creditor has also security given by the firm upon joint property, such creditor could prove his debt and also realize upon his security." *2 Bates Part. § 842.*

There is no question of marshaling involved. Thompson's right to the money raised by sale of Dunn's property is complete and unquestioned.

If Dunn has individual creditors, they cannot now attack Thompson's right to this money. If the amount had been sufficient to pay Thompson's claim against the firm, then the individual creditors, if any, could, perhaps, have successfully asked to be subrogated to Thompson's right to prove against the firm.

My conclusion is that Thompson should receive dividends upon his whole claim, unless the dividends reach an amount more than the remainder due him, after applying the sum received from the Dunn property.